Filed 5/7/25  P. v. Patton CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063264 |
| v. | (Super. Ct. No. 94HF0955) |
| LEONARD JAMES PATTON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Erin Rowe, Judge. Affirmed.

John L. Staley under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

Over 30 years ago, Leonard James Patton murdered a woman while suffering from schizoaffective disorder. He was found not guilty by reason of insanity and was committed to a state hospital. In 2023, hospital staff recommended that Patton be transferred to outpatient treatment. The trial court held an evidentiary hearing and denied the transfer, finding Patton had not shown he is no longer a danger to the community.

Patton asserts the trial court erred by improperly placing the burden of proof on him, by applying the wrong standard in evaluating the transfer recommendation, and by disapproving the transfer. We disagree. The court properly assigned the burden of proof to Patton, the record confirms the court understood and applied the correct standard, and the court did not abuse its discretion in disapproving the recommendation. We therefore affirm the order denying outpatient status.

FACTS

In 1993, Patton began experiencing increasingly severe paranoid delusions as a result of schizoaffective disorder, a combination of schizophrenia and bipolar disorder that results in mood swings and paranoid delusions. He fell into a cycle of engaging in impulsive criminal behavior, receiving psychiatric treatment, not taking his prescribed psychotropic medications, and then experiencing worsening symptoms.

In 1994, Patton impulsively traveled from Minnesota to Orange County, where he murdered a woman with a tire iron because he believed she was a government agent conspiring to get him. He pleaded guilty to first degree murder, but the trial court found him not guilty by reason of insanity. He was then committed to a state hospital.

In 2006, Patton was released to community outpatient treatment. However, his outpatient status was revoked less than a year later because he

2

left the county without permission and acquired a knife in violation of his outpatient terms and conditions.

In 2023, the Orange County Health Care Agency and state hospital concluded Patton could be safely treated in the community and recommended to the trial court that he be transferred to outpatient treatment. The People opposed the recommendation.

The trial court held an evidentiary hearing. It heard testimony from a state clinical forensic psychologist who attested that Patton is compliant with his medications and symptom-free from psychosis or schizoaffective disorder. However, the psychologist conceded Patton still struggles with social phobia and severe social anxiety, which could be exacerbated in an uncontrolled environment.

After considering the evidence, the trial court denied the transfer recommendation. It explained Patton has the burden to show he is either not mentally ill or not dangerous. Because Patton's "mental illness is undisputed," the court focused on whether Patton had established he would not be a danger to the community if transferred to outpatient treatment. The court found Patton had not carried that burden, citing his criminal history, his serious commitment offense, his rule violations when receiving outpatient treatment in 2006, his ongoing social phobia and severe anxiety that worsen when he is around people, and his lack of a support system to help him cope with increased anxiety in an outpatient environment. The court also questioned certain aspects of the psychologist's testimony, such as her statements that Patton may have blacked out during the murder and that he does not target women, both of which were contradicted by the record.

DISCUSSION

A defendant who is committed to a state hospital due to insanity may later be placed on outpatient status if (1) the directors of the state hospital and the community program recommend it and (2) the trial court approves the recommendation after a hearing. (*People v. Sword* (1994) 29 Cal.App.4th 614, 620 (*Sword*); see Pen. Code,[1] §§ 1026.1, subd. (c), 1600 et seq.) At the hearing on the recommendation, the court "shall consider the circumstances and nature of the criminal offense leading to commitment and . . . the person's prior criminal history" and then "either approve or disapprove the recommendation for outpatient status." (§ 1604, subd. (c) & (d).)

"[T]he judge's role is not to rubber-stamp the recommendations of the [hospital] doctors and the community release program staff experts. Those recommendations are only prerequisites for obtaining a hearing." (*Sword*, *supra*, 29 Cal.App.4th at p. 628; see § 1063, subd. (a).) Rather, "[t]he court's role is to apply a community standard to the release decision" (*Sword,* at p. 628) and consider "whether outpatient treatment will pose an undue risk to the safety of the community" (*People v. McDonough* (2011) 196 Cal.App.4th 1472, 1490 (*McDonough*)).

In conducting its evaluation, the trial court is "not obligated to follow the recommendations of the doctors and other expert witnesses [and may] disregard those recommendations for nonarbitrary reasons." (*Sword*, *supra*, 29 Cal.App.4th at p. 629.) For example, a court may properly reject uniform expert recommendations supporting the transfer based on gaps in the expert's knowledge of the defendant's file or her failure to consider

---

[1] All further statutory citations are to this code.

certain facts. (*Id.* at p. 625.) We review an order denying outpatient status for abuse of discretion. (*McDonough, supra,* 196 Cal.App.4th at p. 1489.)

Patton contends the trial court erroneously placed the burden on him. The court made no error. Although the statute does not specify who has the burden of proof in an outpatient status hearing, California courts, including this division, have uniformly placed the burden on the defendant to show he is either no longer mentally ill or not dangerous. (*McDonough, supra,* 196 Cal.App.4th at p. 1475; *People v. Cross* (2005) 127 Cal.App.4th 63, 72; *Sword, supra,* 29 Cal.App.4th at pp. 621, 624.) We see no reason to adopt a different rule now.

Patton next asserts the trial court applied the incorrect standard in considering the outpatient transfer recommendation. According to Patton, the court believed it had "unfettered discretion" to decide whether to transfer him. We do not read the record that way. Although the court prefaced its ruling by noting it has "discretion" under section 1604 to approve or disapprove the recommendation, it went on to state the correct standard for its decision, noting that "[t]he proponent has the burden of proof and must show by a preponderance of the evidence that the defendant is either not mentally ill or not dangerous." Read in context, the court's reference to its discretion does not suggest it believed it could completely disregard the evidence, but rather suggests the court understood it could disapprove the transfer recommendation for nonarbitrary reasons. We discern no error. (*Sword, supra,* 29 Cal.App.4th at p. 629.)

Finally, Patton contends the trial court erred in rejecting the outpatient transfer recommendation because the state psychologist's opinion was unrebutted. Again, we are not persuaded. The court's role is not to "rubber-stamp" the transfer recommendation; the court may disregard even

5

uncontroverted recommendations of hospital doctors and experts for nonarbitrary reasons. (*Sword*, *supra*, 29 Cal.App.4th at pp. 628–629.) In this case, the court cited multiple contradictions in the psychologist's testimony. Its rejection of her testimony was neither arbitrary nor an abuse of discretion. (See *id*. at pp. 624–625.)

## DISPOSITION

The order denying outpatient status is affirmed.

SCOTT, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.